STATE OF ALABAMA ex rel. MacDonald GALLION, as Attorney General of the State of Alabama, Complainant,

v.

William P. ROGERS, as Attorney General of the United States of America; Joseph M. F. Ryan, Jr., as Acting Assistant Attorney General of the United States of America, Civil Rights Division; J. Edgar Hoover, as Director of the Federal Bureau of Investigation; R. B. Miller, as Special Agent in Charge of the Federal Bureau of Investigation; Spencer H. Robb, as Senior Resident Agent of the Federal Bureau of Investigation; John Doe, Richard Roe, Being the Person or Persons Who Have Been Directed by the Attorney General of the United States to Obtain Records and Papers Pertaining to Acts Requisite to Voting in Alabama, Respondents.

In re Crum DINKENS, Mrs. Robert S. Lampley, George Penton, Members of the Board of Registrars, Montgomery County, Alabama.

Civ. A. Nos. 1616-N, 1619-N.

United States District Court
M. D. Alabama, N. D.

Aug. 11, 1960.

---

MacDonald Gallion, Atty. Gen., of Ala., Gordon Madison and Leslie Hall, Asst. Attys. Gen. of Ala., for complainant.

Joseph M. F. Ryan, Jr., Acting Asst. Atty. Gen., of U. S., D. Robert Owen, Atty., Dept. of Justice, Washington, D. C., and Hartwell Davis, U. S. Atty., Montgomery, Ala., for respondents.

MacDonald Gallion, Atty. Gen. of Ala.,; and William F. Thetford, Circuit Solicitor, Montgomery County, Montgomery, Ala., for members of Bd. of Registrars.

Joseph M. F. Ryan, Jr., Acting Asst. Atty. Gen., of U. S., Harold H. Greene, D. Robert Owen, Attys., Dept. of Justice, Washington, D. C., and Hartwell Davis, U. S. Atty., Montgomery, Ala., for applicant.

JOHNSON, District Judge.

In Civil Action No. 1619–N, as above captioned, the Attorney General of the United States, acting pursuant to Title III of the Civil Rights Act of 1960 (P.L. 86–449, 74 Stat. 86, 42 U.S.C.A. § 1974 et seq.), seeks to have this Court enter an order directed to the members of the Board of Registrars of Montgomery County, Alabama, for the production of all records and papers in their possession or under their control relating to any application, registration, payment of poll tax, or other act requisite to voting.

To this action, the members of the Board of Registrars seek to have this Court strike and dismiss. The Board also answers and seeks to file a cross complaint, asking this Court to enter an injunction against the enforcement and application of Title III of the Civil Rights Act of 1960 on the grounds that said Act (insofar as it authorizes the Attorney General of the United States to inspect records) is unconstitutional. The Board of Registrars says further that the order sought by the Attorney General of the United States has the effect of an injunction against the enforcement or execution of a state statute and therefore requires a three-judge court within the contemplation of Title 28, U.S.C.A. § 2281.

The demands of the Attorney General to inspect, etc., the records of the Montgomery Board of Registrars was made and served on May 23, 1960; compliance was requested within fifteen days. On the 6th day of June, 1960, the Attorney General for the State of Alabama sought and obtained from the Circuit Court of Montgomery County, Alabama, a temporary injunction and restraining order forbidding the Attorney General of the United States, his "agents, servants, employees and attorneys * * *" to inspect or copy the records and papers in the possession, custody and control of the "several Boards of Registrars of the various counties of Alabama, under the color of authority purportedly given * * * by the 'Civil Rights Act of 1960' ".

The state court's injunction was predicated upon the allegations (in the complaint) that the Civil Rights Act of 1960 was unconstitutional and void.

The state court action was removed (28 U.S.C.A. § 1442) to this Court as Civil Action No. 1616–N, by the Attorney General of the United States. Now pending and submitted in this action is the motion of the Attorney General of the United States to dismiss and the motion of the Attorney General of Alabama to remand.

Since the issues on the merits are common to the two proceedings, they have been consolidated for argument and submission.

There are only two basic legal questions involved in these proceedings: the authority of the circuit court of the State of Alabama to enjoin the action of the Attorney General of the United States as it did in its order of June 6, 1960, and the constitutionality of Title III of the Civil Rights Act of 1960.

These questions will be discussed and dealt with by this Court in that sequence.

*The Circuit Court's Injunction*:

■ Section 305 of Title III of the Civil Rights Act of 1960 [1] vests jurisdiction for the settlement of disputes under that Title in the federal district courts. There is nothing in the language or legislative history that permits the conclusion that the jurisdiction of the federal district courts is to be shared with the courts of the various states. Rather, the entire history of the Act reflects that it was and is designed to provide a means of enforcing the basic federally guaranteed rights of citizenship (to vote) against state action. It is apparent to this Court that Congress did not intend this jurisdiction to be concurrent with state courts, since such would be incompatible from the "particular nature of the case." Claflin v. Houseman, 93 U.S. 130, 23 L.Ed. 833; San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775.

Such action by state courts in matters exclusively within the jurisdiction of the federal courts cannot be tolerated without there being created frustration of national purposes. Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892; Garner v. Teamsters Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228.

The invocation of this basic legal principle works no hardship or injustice on the Board of Registrars; they have—when and if there is threat of injury—a judicial forum in which to litigate (i. e., the United States courts) and a definite judicial procedure to follow.

■■ Aside from the fact that the jurisdiction conferred by Section 305 of the Act is exclusively vested in the United States district courts, the state court action in issuing its injunction of June 6, 1960,[2] was in violation of the basic legal principle that state courts are without jurisdiction to review the discretion or enjoin the acts of federal officers. Here the Attorney General of the United States made his request of May 23, 1960, in the exercise of the discretion vested in him by Section 303 of Title III of the Civil Rights Act of 1960.[3] One of the recent cases restating this principle is Rogers v. Calumet National Bank, 1959, 358 U.S. 331, 79 S.Ct. 350, 3 L.Ed.2d 344, with the Supreme Court stating:

"* * * a state court is without power to review the discretion exercised by the Attorney General of the United States under federal law."

It necessarily follows that if a state court is without jurisdiction to review the exercise of discretion by a federal official, it may not take affirmative action in the form of an injunction to prevent such official from carrying out his statutory duties. Tarble's Case, 13 Wall. 397, 20 L.Ed. 597; Keely v. Sanders, 99 U.S. 441, 25 L.Ed. 327.

■ Examining still further the state court's injunction of June 6, 1960, it appears that the injunction proscribes action in all sixty-seven counties of the State of Alabama; this without any action by the Attorney General of the United States being taken (and probably not contemplated) in a great majority of those counties. It is quite obvious that

---

[1]. "Sec. 305. The United States district court for the district in which a demand is made pursuant to section 303, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper."

2. The objection of the State of Alabama to the removal of Civil Action No. 1616–N is without merit. Section 1442(a) (1) of 28 U.S.C.A. affords a basis for such removals where the civil action is brought against the federal official "for any act

under color of such office." Also see De-Busk v. Harvin, 5 Cir., 212 F.2d 143.

3. "Sec. 303. Any record or paper required by section 301 to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor."

since there has been no demand of registrars in a great majority of the counties, the state court order, insofar as it attempts to affect action of the Attorney General of the United States (in counties other than Montgomery) was premature and totally without legal effect.

Because of the several sound and basic reasons supporting this Court's conclusion that the action of the state court is without authority and void, it is not considered necessary to go into or discuss at length at this point in this opinion the proposition that the suit filed by the Attorney General for the State of Alabama was a suit against the United States and therefore unauthorized. This point will be treated more thoroughly in discussing the cross complaint filed in Civil Action No. 1619–N.

As to Civil Action No. 1616–N, it is therefore clear that the circuit court of Montgomery County was without jurisdiction to act; the motion of the State of Alabama to remand is to be denied and the motion of the Attorney General of the United States (and the other respondents) to dismiss said action is to be granted.

## The Constitutionality of Title III

■ Preliminary to discussing the questions raised concerning the constitutionality of Title III of the Civil Rights Act of 1960, it is appropriate to look to its purpose. The legislative history leaves no doubt but that it is designed to secure a more effective protection of the right to vote.[4]

Title III provides—if properly applied and enforced—an effective means whereby preliminary investigations of registration practices can be made in order to determine whether or not such practices conform to constitutional principles. Quoting from a decision of this Court in In re Wallace, D.C.M.D.Ala.1959, 170 F. Supp. 63, 67, the House Committee referred to Title III as "an essential step in the process of enforcing and protecting the right to vote * * *"[5]

The constitutional authority of Congress to pass Title III of the Civil Rights Act of 1960 cannot be seriously questioned. See Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307; United States v. Raines, 1960, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524; United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368, and the very recent decision of the three-judge district court in United States v. Association of Citizens Councils of La., Inc., etc., 187 F.Supp. 846 in the United States District Court for the Western District of Louisiana, Shreveport Division.

■ The contention herein made by the State of Alabama, etc., that Title III of the Act is not authorized or "appropriate legislation" is clearly wrong.[6] Some of the prior cases dealing with such a contention are Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152; Hannah v. Larche, supra; see also this Court's opinion in In re Wallace, supra, where it was stated:

"The authority delegated to the Federal Government by the Fifteenth Amendment to the Constitu-

4. State action such as taken by the Alabama legislature authorizing registrars to destroy their records is an excellent example.

5. House Report No. 956, 86th Congress, 1st Session, p. 7.

6. Such a contention overlooks that the Fourteenth Amendment to the Constitution provides:

"Section 1. * * * nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

"Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

And also that the Fifteenth Amendment provides:

"Section 1. The right of citizens of the United States to vote shall not be denied or abridged * * * by any State * * *."

"Section 2. The Congress shall have power to enforce this article by appropriate legislation."

tion of the United States is undoubtedly the authority under which the Congress of the United States was acting when the Civil Rights Act of 1957 was passed. The provision in the Act providing for investigation of alleged discriminatory practices, including inspection of voting and other pertinent records, must be considered to be an essential step in the process of enforcing and protecting the right to vote regardless of color, race, religion, or national origin. That part of the Act is, therefore, by this Court considered 'appropriate legislation' within the meaning of Section 2 of the Fifteenth Amendment."

■ Although the particular qualifications one must possess to exercise this right to vote are left to the states—*as long as that exercise is within the constitutional framework*—the power to protect voters who are qualified is confided to the Congress of the United States.

■ The interpretation and reliance by the State of Alabama on Hannah v. Larche, supra, as support for the contention that records may not be required to be produced where the agency seeking production has the power to use such records in its prosecutive function, is misplaced. In the opinion of this Court, that portion of the majority opinion in Hannah v. Larche was for the purpose of distinguishing *not* between agencies having prosecutive functions and those not having such functions, but rather between *investigations* and *adjudications*, regardless of the agency involved. The basis for this Court so concluding is found in that Court's statement [363 U.S. 420, 80 S.Ct. 1515]:

"On the other hand, the investigative process could be completely disrupted if investigative hearings were transformed into trial-like proceedings, and if persons who might be indirectly affected by an investigation were given an absolute right to cross-examine every witness called

to testify. Fact-finding agencies without any power to adjudicate would be diverted from their legitimate duties and would be plagued by the injection of collateral issues that would make the investigation interminable.

\* \* \* \* \* \*

"The history of investigations conducted by the executive branch of the Government is also marked by a decided absence of those procedures here in issue. The best example is provided by the administrative regulatory agencies. *Although these agencies normally make determinations of a quasi-judicial nature, they also frequently conduct purely fact-finding investigations.*" (Emphasis supplied.)

And in connection with that Court's discussion of the actions by the Securities and Exchange Commission, it was stated:

"Although the Commission's Rules provide that parties to adjudicative proceedings shall be given detailed notice of the matters to be determined, id., 1959 Supp., § 201.3, and a right to cross-examine witnesses appearing at the hearing, id., § 201.5, those provisions of the Rules are made specifically inapplicable to investigations, id., § 201.20, *even though the Commission is required to initiate civil or criminal proceedings if an investigation discloses violations of law.* Undoubtedly, the reason for this distinction is to prevent the sterilization of investigations by burdening them with trial-like procedures." (Emphasis supplied.)

The distinction lies in the *function* being exercised. Here the function sought to be exercised by the Attorney General is—as in Hannah—purely investigative. See also the case of In re Groban, 352 U.S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376, relied upon by those members of the Supreme Court who joined in the majority opinion rendered in Hannah.

The complaint by the State of Alabama that the Attorney General's request is vague and the statute is uncertain is without merit. The demand to the registrars made by the Attorney General on May 23, 1960, follows almost exactly the pertinent wording in Sections 301 and 303 of the Act.

There is nothing uncertain about that part of the Act requiring the preservation and production of *all* records and papers which are in the possession of an election official (the members of the Montgomery County Board of Registrars in this case) if those records and papers relate to the acts requisite to voting. This Court concludes that the prescribed standard of Section 301 is clear and unambiguous and was not exceeded by the Attorney General's demand made pursuant to Section 303. Regardless of when these records came into the possession of the election official,[7] under Section 301 they must be retained and preserved for a period of twenty-two months "from the date of any general, special, or primary election * * *" if they relate to acts requisite to voting in such election.

As to the cross complaint which the registrars filed in Civil Action No. 1619–N, it must be dismissed since it improperly seeks to counterclaim for declaratory relief where matter on which relief is sought is in issue in the original suit. Moreover, in this case the affirmative relief (by injunction) sought is obviously defensive; this Court's determination that Title III is constitutional renders the counterclaim without merit.

The claim by the registrars that their counterclaim requires this case to be determined by a three-judge court is likewise without merit. A case is not properly heard by a three-judge district court unless an injunction is sought restraining the enforcement of an Act of Congress on a ground that it is repugnant to the Constitution of the United States. 28 U.S.C.A. § 2282. The mere fact that the constitutionality of an Act of Congress is presented does not make the case a proper one for a three-judge court, for the jurisdiction of such a court is limited. Hall v. Welch, 4 Cir., 185 F.2d 525, and Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800.

The contention that Title III of the Act violates the *ex post facto* clause of Article 1, Section 9, of the United States Constitution, is unsound. The disposition of such a contention by the court in United States v. Association of Citizens Councils of La., Inc., supra, is applicable here:

"The defendants rely heavily on the contention that Section 301 of the Act violates the *ex post facto* clause of Article 1, Section 9, of the United States Constitution. We find no violation of this clause, since Section 301 operates only prospectively and not retrospectively as to any criminal prosecution. It is well settled, of course, that the prohibition against *ex post facto* legislation applies only to criminal proceedings and not to civil matters such as this. We note that Section 302 of the Act, covering criminal prosecution for the destruction of records, does not permit punishment for destructions prior to May 6, 1960, the effective date of the Act."

The other several miscellaneous "defenses" asserted by the state officials appear to be in the nature of "bootstrap" defenses and do not merit discussion.

For the foregoing reasons, the motions of the Board of Registrars to strike and to dismiss the application of the Attorney General for an order to require the production of records are to be overruled and denied; the motion of the Attorney General of the United States to strike and dismiss the registrars' cross complaint is to be granted, and the application for an order to require the produc-

---

7. In this case, the Montgomery County registrars have not destroyed the records they possessed prior to the passage and approval of the 1960 Civil Rights Act on May 6, 1960.

tion of records for inspection, reproduction and copying, said application filed with this Court on June 13, 1960, is to be granted.

Formal orders will be entered accordingly.