Robert F. KENNEDY, Attorney General of the United States, Appellant,

v.

Theron C. LYND, Registrar of Elections of Forrest County, Mississippi, Appellee.

Robert F. KENNEDY, Attorney General of the United States, Appellant,

v.

Mrs. Mary K. BRYCE, Registrar of Voters of Bossier Parish, Louisiana, Appellee.

Robert F. KENNEDY, Attorney General of the United States, Appellant,

v.

Mrs. Winnice J. P. CLEMENT, Registrar of Voters of Webster Parish, Louisiana, Appellee.

Robert F. KENNEDY, Attorney General of the United States, Appellant,

v.

Sidney Wells PLATT, Registrar of Voters of Desoto Parish, Louisiana, Appellee.

Robert F. KENNEDY, Attorney General of the United States, Appellant,

v.

U. Charles MITCHELL, Registrar of Voters of Caddo Parish, Louisiana, Appellee.

Nos. 19636, 19737–19740.

United States Court of Appeals
Fifth Circuit.

July 11, 1962.

Rehearing Denied Aug. 8, 1962.

See also 301 F.2d 818.

No. 19636:

Robert E. Hauberg, Asst. U. S. Atty., Jackson, Miss., Harold H. Greene, Atty., Dept. of Justice, Burke Marshall, Asst. Atty. Gen., Howard A. Glickstein, Atty., Dept. of Justice, Washington, D. C., for appellant.

Francis T. Zachary, M. M. Roberts, Hattiesburg, Miss., Dugas Shands, Peter M. Stockett, Jr., Edward L. Cates, Asst. Attys. Gen. of Mississippi, Jackson, Miss., Joe T. Patterson, Atty. Gen. of Mississippi, for appellee.

Nos. 19737–19740:

David Rubin, Atty., Dept. of Justice, Washington, D. C., Edward L. Shaheen, U. S. Atty., Shreveport, La., Burke Marshall, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for appellant.

John A. Richardson, Shreveport, La., Harry J. Kron, Jr., Asst. Atty. Gen. of Louisiana, Baton Rouge, La., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

These cases from two District Courts in two States raise in a number of different procedural ways the central question of the proper disposition of a Title III proceeding by the United States Attorney General for appropriate court orders to obtain "inspection, reproduction, and copying" of voter records. Public Law 86–449, Title III, §§ 301–306, May 1960, 42 U.S.C.A. § 1974.

A consideration of these two groups of cases from as many courts and states reflects a further common thread—a basic misconception by the respective trial Judges concerning a Title III proceeding. As this is a matter of recurring importance, we think it appropriate to make plain again that which we have tried so painstakingly to make plain before. That includes, without any reservations whatsoever, a reiteration of our prior decisions. These start with In re Dinkens v. Attorney General, 5 Cir., 1961, 285 F.2d 430, approving and adopting the opinion and decision of Judge Johnson in State of Alabama ex rel. Gallion v. Rogers, M.D.Ala., 1960, 187 F.Supp. 848; and the two subsequent decisions, Kennedy v. Bruce, 5 Cir., 1962, 298 F.2d 860; and United States v. Lynd, 5 Cir., 1962, 301 F.2d 818. A restatement of these principles will, we think, readily indicate the proper disposition of each of the individual cases.

At the outset we emphasize again that the filing of the application by the Attorney General is not the commencement of an ordinary, traditional civil action with all of its trappings. It is, however, comparable to the form of a traditional order to show cause, or to produce in aid of an order of an administrative agency. It certainly has the requisites of a "case or controversy" to satisfy the requirements of Article III of the Constitution. In re Summers, 1945, 325 U.S. 561, 65 S.Ct. 1307, 89 L. Ed. 1795; Aetna Life Ins. Co. of Hartford v. Haworth, 1937, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617. There are adversaries—the Attorney General seeking an order against the objecting State official as custodian. § 1974b. The dispute is real and present as the application seeks "appropriate process," § 1974d, in order "to compel the production" of records or papers demanded by the Attorney General in writing. § 1974b. That by its terms and operation, Title III narrowly circumscribes the issues upon which the Court is to act does not make the proceeding or that determination any less judicial. For "in passing upon the application [to issue or not issue an order to produce] the court exercises judicial judgment. It does not confer or withhold a favor." Tutun v. United States, 1926, 270 U.S. 568, 578, 46 S.Ct. 425, 427, 70 L.Ed. 738.

But this is not, we repeat, the ordinary civil action. It is a special statutory proceeding in which the courts play a limited, albeit vital, role. In words adopted as our own, we said that Title III provides "an effective means whereby preliminary investigations of registration practices can be made in order to determine whether or not such practices conform to constitutional principles." State of Alabama ex rel. Gallion v. Rogers, D.C., 187 F.Supp. 848, 853. Relying on the principles expounded in Hannah v. Larche, 1960, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307, we translated them effectively in specific terms of a Title III proceeding. "Here the function sought to be exercised by the Attorney General is—as in Hannah—purely investigative." State of Alabama ex rel. Gallion v. Rogers, D.C., 187 F.Supp. 848, 854.

Since it is a special statutory proceeding, it does not require pleadings

which satisfy usual notions under the Federal Rules of Civil Procedure. All that is required is a simple statement by the Attorney General that after a § 1974b written demand for inspection of records and papers covered in § 1974, the person against whom an order for production is sought under § 1974d has failed or refused to make such papers "available for inspection, reproduction, and copying * * *."

There is no place for a motion for a bill of particulars or for a more definite statement under F.R.Civ.P. 12(e), 28 U.S.C.A. There is no place for any other procedural device or maneuver—either before or during any hearing of the application—to ascertain the factual support for, or the sufficiency of, the Attorney General's "statement of the basis and the purpose therefor" as set forth in the written demand. § 1974b. Thus with respect to the reasons why the Attorney General considers the records essential, there is no place, either as a part of pleadings, discovery, or trial, for interrogatories under F.R.Civ.P. 33, oral depositions of a party under F.R.Civ. P. 26(a), 30, production of documents under F.R.Civ.P. 34, or request for admissions as to facts or genuineness of documents or other things under F.R. Civ.P. 36, 37. The same is true as to the nature, kind or specification of the records and papers sought, the names, identities or addresses of persons thought to have received discriminatory treatment, whether favorable or adverse, and the like.

On the filing of this simple statement by the Attorney General, the Court is required to treat it as a summary proceeding. The Court, with expedition, should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination. These are, of course, severely limited. In the event of a genuine dispute thereon, it would be in order for the Court to determine whether the written demand has been made, § 1974b, or whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding. On the other hand, the factual foundation for, or the sufficiency of, the Attorney General's "statement of the basis and the purpose" contained in the written demand, § 1974b, is not open to judicial review or ascertainment. Nor is the scope of the order to produce insofar as it concerns the nature of the records or papers. This is so because the papers and records subject to inspection and demand have been specifically identified by Congress. The Attorney General is entitled to have made available for his "inspection, reproduction and copying" in the custodian's office "any record or paper" which § 1974 requires "to be retained and preserved." The incorporated standard of § 1974 is sweeping. Every election officer is required to retain and preserve " * * * all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting" in the specified elections for federal offices.[1] If, after issuance of an order to produce, a genuine dispute subsequently arises as to whether or not any specified particular paper or record comes within this broad statutory classification of "all records and papers * * * relating to any * * * act requisite to voting," the Court would, of course, be open for its determination.

Likewise, there is no question for judicial determination as to how far back the records go. This, too, is fixed by the statute. In other words, Congress has determined *what* records are to be retained and subject to production.

[1] The time and the nature of the elections are tied together as § 1974 provides that all such records shall be retained and preserved "for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for * * *."

Since the statute specifies "all records and papers" in the officer's custody "relating to any application * * * or other act requisite to voting * * *," in such elections held within twenty-two months, the custodians' duty to retain and preserve and the Attorney General's right of inspection and copying extend as far back as the earliest date of any such record or paper which bears on the eligibility of any currently listed voter to vote in such election.[2] If after granting the order as to all such records back to the time of the earliest federal election within the 22-month period preceding the filing of the § 1974 application, any substantial question arises concerning the most remote date beyond that time, the court will be open to determine that issue on the basis of the statutory standard. But the cutoff date is in no way related to the identity or status of "the person having custody, possession, or control," § 1974b or the time at which any such person acceded to or terminated such office.

Similarly the right of the Attorney General to inspect and copy such records is not dependent upon an existing demonstrable right in the United States or the Attorney General to successfully maintain an injunction suit under, or similar to § 1971(a–f) against any present or preceding election officer. His right to records does not require that he show he could win without them. The right of the Attorney General to secure judicial enforcement of the written demand § 1974b, is not affected in any way by the pendency of a § 1971 case or the right of discovery in such case under the Federal Rules of Civil Procedure. The two proceedings are distinct and distinctively separate.

This analysis demonstrates the narrowly confined issues open for judicial review or ascertainment. The restricted substantive nature of the proceeding consequently limits in like manner the place of the resort to, or the application of procedural rules or devices as well as the scope and nature of any hearings required and the evidence admissible thereon.

With these principles clearly in mind, the disposition of each of the separate cases is readily made.

### No. 19636
### Lynd, Registrar Forrest County, Mississippi

There is no necessity for going into any detail. It suffices to say that over 18 months ago the Attorney General on January 19, 1961, filed his Title III application for an order requiring the Registrar to make available for inspection and copying all records or papers in his possession relating, in the words of the statute, to the elections for federal office. This was to secure the inspection demanded in writing on August 11, 1960. After a series of motions, motions to dismiss, opposing substitution motions for more definite statement and briefs and repeated extended oral arguments thereon, but with no clear-cut ruling, no indication that this interminable proceeding would ever come to an end, and certainly never an order for production, the District Court effectually denied the Attorney General's application,

The stated reason was that subsequent to the § 1974 application, the Attorney General in the name of the United States filed a § 1971 complaint against Lynd, as Registrar, seeking injunctive relief for discriminatory practices.[3] In the

2. Thus, for example, in Alabama where registration is permanent and reregistration is not required, this would extend as far back as the earliest application for registration of any person eligible to vote in the most recent federal election. See State of Alabama v. United States, 5 Cir., 1962, 304 F.2d 583, note 7 and appended text. Provision is made in Louisiana also for certain permanent registrations.

See LSA–R.S. 18:231–18:261, Acts 1952, No. 415, § 2 as amended Acts 1954, No. 250, § 1 et seq.

3. It was nonaction in this very case, construed by us to be an effectual denial of preliminary relief, that led to our injunction pending appeal in United States v. Lynd, 5 Cir., 1962, 301 F.2d 818.

course of that proceeding, and on the Government's broader motion under F.R. Civ.P. 34, the Court had ordered the production of certain, but limited, voter records. The Government contends that this Rule 34 order was too restricted, but this issue is not before us directly. The District Court in its opinion concluded that "the Attorney General has instituted two separate suits against the same defendant and that the later [§ 1971 discrimination] suit embraces all of the subject matter contained in the former [§ 1974] suit." Consequently, the Court went on, by filing his Rule 34 motion the Attorney General "thereby abandoned in its entirety" the § 1974 application so that "the entire cause of action now pending before" the District Court in both the § 1974 and § 1971 cases "is embraced and contained in * * * [the § 1971] amended complaint and motion under Rule 34." On the basis of that the Court ruled that all of "the six motions pending in [the § 1974 proceeding] have been rendered and are academic and moot by reason of the abandonment of said * * * suit * * *." Then to snuff out the last vestige of life in this abandoned cause the Court, administering the *coup de grace,* declared that it "adjudges [the § 1974 proceeding] as abandoned and effectually nonexistent." On the basis of this opinion incorporated expressly in his order, the District Court then "ordered that this cause, and the complaint * * * be and the same are hereby remanded to the files of this Court."

■ We first reject the contention that this was not such a final order as to be appealable, 28 U.S.C.A. § 1291, United States v. Wood, 5 Cir., 1961, 295 F.2d 772, 777.

■ On the merits, the action is clearly wrong. The Title III proceeding is investigative in nature. Its purpose is to enable the Attorney General to determine whether § 1971 suits or similar actions should be instituted. And it is to enable him to obtain evidence for use in such cases if and when filed. The Attorney General does not exhaust the § 1974 right which Congress accorded to that office by the filing of a § 1971 injunction suit. The discovery mechanisms available in such injunction action are necessarily geared to that particular claim. Questions of relevancy or good cause or other like considerations which must be evaluated in the injunction suit are completely foreign to the summary proceeding under § 1974.[4] Indeed, one of the clearest purposes of the Title III proceeding is to enable the Attorney General to assemble all of the voter record information within the time-reach of the statute relating to all persons as to whom there is a question concerning infringement or denial of their constitutional voting rights. Wide scope must be accorded the Attorney General in the facilities for adequate investigation. Relief under § 1971(c) is not confined to named individual voter officials but extends as far as the sovereign State itself. The establishment of a discriminatory "pattern or practice" sets in motion the extraordinary remedies of § 1971(e). Establishing a "pattern or practice" of such discrimination may go back many, many years. State of Alabama v. United States, 5 Cir., 1962, 304 F.2d 583. Clearly within the time cutoff period of § 1974 the Attorney General, in fulfillment of the duties imposed upon him by the Civil Rights Act of 1957 and 1960, is entitled to inspect and copy all of the voter papers and records as defined.

4. This is not to disparage the wonderful flexibility of such discovery weapons. Thus, for example, the scope of examination in pretrial depositions under F.R. Civ.P. 26(b), and for production of documents under F.R.Civ.P. 34 in a § 1971 suit might well have to go back many, many years as a basis for establishing a pattern or practice of discrimination, § 1971(e), or in leading to the "discovery of admissible evidence," F.R.Civ.P. 26(b), to establish such pattern. At the same time, depending on the local registration system, the Attorney General's right under § 1974 might go back only 22 months, § 1974.

There is no longer any question about the respondent Lynd having actual notice of this application. The record establishes without contradiction that the § 1974b written demand was made and that it adequately stated the basis and the purpose therefor.[5] There is nothing left in dispute. Consequently, the order of the District Court must be vacated, and the District Court is directed to grant without further delay the application to have these records made "available for inspection, reproduction, and copying at the principal office of such custodian" as requested. The mandate of this Court shall issue forthwith.

> No. 19737 — Bossier Parish
> No. 19738 — Webster Parish
> No. 19739 — DeSoto Parish
> No. 19740 — Caddo Parish

These cases were consolidated and heard together, both below and here. The District Judge, acutely aware of our prior decisions in Kennedy v. Bruce, 5 Cir., 1962, 298 F.2d 860, the earlier approval of Judge Johnson's decision and our even more recent decision in United States v. Lynd, 5 Cir., 1962, 301 F.2d 818, displayed an earnest concern that the decision comply fully with the principles we had announced. Despite the heavy demands of that busy District Judge Dawkins heard and decided all four of these § 1974 applications within sixty days of their filing by the Attorney General on April 4, 1962. In each case there was an identical written demand, § 1974, and an express refusal upon the part of each Registrar to comply.[6]

The District Judge applying, as he was bound to, the principles we have expounded rejected the contentions asserted by each of the Registrars that the statement of "the basis and purpose therefor" in

the letter demand was inadequate; that the demand as made would be in conflict with applicable Louisiana statutes; that there was no necessity for the inspection (at least in two Parishes) since there was no discrimination; and that Title III was unconstitutional. As to two of the Parishes, further objection was made that all or a part of these records had already been inspected and copied by the United States Civil Rights Commission. There was also an effort to limit any inspection and copying to a period of 22 months after November 6, 1961, or 22 months after the November 1960 election. The Registrars also sought specific conditions limiting the number of representatives of the United States Attorney General, approval by the Court of the copying methods, and prohibiting the inspectors from questioning the Registrar's staff. All of these the District Judge, for adequate reasons, likewise overruled. As he was compelled to do, the Judge also rejected the contention that the Attorney General be required to specify the records.

Having done that, the District Court then proceeded to enter orders granting the right of inspection and copying, but he attached certain conditions to which the United States Attorney objects. It is our conclusion here that these conditions were erroneously attached and, as in the other case, this largely resulted from a basic, though more narrowly confined, misconception of the nature and purpose of a Title III proceeding.

As to Bossier and Webster Parishes, the Court declined to allow inspection and copying of records prepared or compiled prior to April 1, 1961, on the ground that in April 1961 the United States Civil Rights Commission had inspected and copied voting records in those Parishes.

5. It was substantially in the same words as the Louisiana demands, see note 6, infra.

6. The letter of United States Attorney General made this "statement of the basis and the purpose therefor," § 1974b:
"This demand is based upon information in the possession of the Attorney

General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction.
"The purpose of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred."

**230**

To the Attorney General's suggestion that the Department of Justice might not be able to get these records from the Civil Rights Commission, the Judge then provided that upon such a showing the order would be modified to allow inspection and copying of all voting records subsequent to the accession to office of the present Registrars.

We think this misconceives the underlying nature of a Title III proceeding. Congress has specifically committed the investigative responsibility to the Attorney General and has equipped him with machinery thought suitable for the effective fulfillment of that obligation. Congress has specified the person *who* shall seek. It has specified as well the person from *whom* the information shall be obtained. The latter is, of course, the custodian of the records, not the Federal Civil Rights Commission.

 Undoubtedly Judge Dawkins —probably from his intimate contact with the work of the Civil Rights Commission as it came before his Court in the activity leading to Hannah v. Larche, 1960, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed. 2d 1307—felt that this current contemporary demand was oppressive and burdensome because it was a complete duplication. Where a District Judge actually finds that this is the situation, we have no doubt that in administering § 1974d the power and duty to issue "appropriate process to compel the production" of such records and papers will include the power and duty to issue protective orders as well. But it seems quite likely from a consideration of the reports of the Civil Rights Commission to which we have been directed as a matter of judicial knowledge that a number of the records and papers which might well be important to the Attorney General were not copied by that Commission whose statutory function is quite different. Undoubtedly overlooked, also, was the technical problem facing the Attorney General in the future use of copies made or obtained from copies in the custody of the Civil Rights Commission. On the other hand, authenticity and admissibil-

ity of those made in the office of the Registrars would be quite clear. 28 U.S.C.A. §§ 1731, 1732.

 The District Court was likewise in error in refusing to require the Registrars to produce those records prepared or compiled prior to the incumbency of the present Registrar. This was done presumably on the theory that the present Registrar could not be held responsible for acts and practices of his predecessors. This is again the basic error of confusing a Title III proceeding with an action for injunctive or other relief under § 1971. Here the Registrar is a party, not because the Attorney General is seeking a judicial declaration that such official has violated federal statutes or constitutional rights. The Registrar is a party because he is, in the words of the statute, the "officer of election," § 1974e, and is the "person having custody, possession, or control of such record," § 1974b. The statute subject only to the time cutoff prescribed, requires the retention and preservation of "all records and papers which come into his possession relating to any * * * act requisite to voting * * *." § 1974. All means all. The responsibility of such "officer of election" is not confined to records which are compiled subsequent to his taking office. His responsibility is as extensive as the cutoff date and whatever has come into his custody, possession or control from his predecessors, he must faithfully keep under the sanction of a fine or imprisonment if he "wilfully fails to" retain and preserve them as required. § 1974. As pointed out above, under § 1971(c) and (e), the records and papers have an immediate importance as a likely source of significant information in determining the existence of a "pattern or practice" or conduct by current or prior voting officials which will "also be deemed that of the state."

 We think also that it was erroneous for the District Court to prescribe that the inspection and copying should not commence until after September 1, 1962. The Court was, we know, concerned about possible interference

with the performance of regular duties by these Registrars, several in very cramped and perhaps limited quarters, in connection with the primary election to be held in Louisiana on July 28, 1962, with the possibility that this would be followed by another primary on September 1. But we do not think that the record made before the District Court affords any real convincing reason why this much delay is required. For a proceeding commenced in April 1962, the disposition would hardly be the prompt one which our decisions require if effective compliance is to be postponed five months. We think two things are of great importance in dealing with this problem. First, we are not discussing confidential, private papers and effects. We are, rather dealing with public records which ought ordinarily to be open to legitimate reasonable inspection and which by nature relate directly to the most vital of all public functions—the franchise of the citizen. Next, once it is recognized—as it surely must be now—that this act of Congress is valid and that Court decisions unmistakably indicate that the congressional objective of a prompt and expeditious inspection is to be achieved, we think there is really nothing to these mechanical objections. Copying 100 or 1,000 sheets would, at one time, have been a formidable thing. Modern photostating equipment will make short order of most of these demands, and where the task is more complicated because of volume or the pressure of contemporary interruptions for normal office operation, we are confident that with only slight personal adjustments, the agents of these dual sovereigns should be able to work out a reasonable schedule without putting that policing task upon the overburdened shoulders of a United States District Judge.

The result is that we sustain the appeal of the Attorney General. We hold that each of the conditions attached to the order to produce was erroneous. But in all other respects, the orders were proper. Consequently, we reject all of the attacks asserted by the appeals (or cross appeals) of the Registrars. The orders are modified by deleting the conditions which we have found to be erroneous. As thus modified, the orders are affirmed and remanded to the District Court to fix consistent with this opinion a beginning time for the inspections. The mandate of this Court shall issue forthwith.