Edna H. SOBEL, M. D., and Bella C. Clutario, on behalf of themselves and other professional faculty members employed by the Defendant, Yeshiva University, similarly situated, Plaintiffs,

and

Equal Employment Opportunity Commission, Applicant in Intervention,

v.

YESHIVA UNIVERSITY, Ephraim Friedman, M. D., Chester Edelman, Jr., M. D., Emanuel Genn, Henry L. Barnett, M. D., Labe C. Scheinberg, Harold Schulman, M. D., Neal Bricker, M. D., Edward J. Hehre, M. D., Henry P. Lauson, M. D., Arthur S. Abramson, M. D., Defendants.

No. 75 Civ. 2232 (GLG).

United States District Court, S. D. New York.

May 31, 1977.

Buttenwieser & Josephs, New York City, for plaintiffs; Bonnie P. Josephs, New York City, of counsel.

Sidney Schutz and Winer, Neuburger & Sive, New York City, for defendants; Daniel Riesel, Mark A. Chertok, New York City, of counsel.

Equal Employment Opportunity Commission, Washington, D. C., for intervenor; Debra A. Millenson, Washington, D. C., Margil Garza, of counsel.

## OPINION

GOETTEL, District Judge.

The Equal Employment Opportunity Commission ("EEOC") has moved, pursuant to Fed.R.Civ.P. 24(b)(1), for leave to intervene in an action brought by two female doctors on the staff of the Albert Einstein College of Medicine of Yeshiva University, on behalf of themselves and other female professional faculty members, alleging sexual discrimination in promotions and salary at the college. The defendants, the University, the college's deans, and the heads of various departments, vigorously oppose the intervention.

The named plaintiffs, both of whom are in the Pediatrics Department of the college, filed charges with the EEOC in May, 1975. Before the EEOC had even commenced a meaningful investigation, plaintiffs obtained a "right-to-sue" letter and commenced this litigation. While the original charges concerned only the Pediatrics Department of the college, the complaint was subsequently amended to include the entire college and several specified department heads. The EEOC attempted, subsequent to the institution of litigation, to conduct its own investigation, but met vigorous resistance from the defendants, who contended that it was improper for them to be confronted simultaneously with administrative action and litigation. Therefore, most of the pertinent information the EEOC obtained comes from the file of plaintiffs' counsel (excepting those materials previously disclosed to plaintiffs' counsel under a confi-

dentiality order). In December of 1976, based primarily upon such information, the EEOC moved to intervene. Prolonged discovery concerning the propriety of intervention followed, much of which was hotly contested and required rulings of a Magistrate and appeals to the district court.

The statutory structure of Title VII requires the EEOC, prior to intervention, to act upon a certification that the case is of general public importance, 42 U.S.C. § 2000e–5(f)(1). Defendants contend that the Certificate of General Public Importance issued here was an abuse of discretion. There is a substantial question whether the agency action is subject to judicial review. *See e. g., Kennedy v. Lynd,* 306 F.2d 222 (5th Cir. 1962); *Bennett v. McDonald's Systems, Inc.,* 13 F.E.P. 326, 327–28 (N.D.Ohio 1976); *Jones v. Holy Cross Hospital Silver Springs, Inc.,* 64 F.R.D. 586 (D.Md.1974); *United States v. Gray,* 315 F.Supp. 13 (D.R.I.1970). It is not necessary, however, to consider whether any degree of judicial review is permissible.

While all of the interested parties would be represented if a class is certified and plaintiffs' counsel are eminently qualified in this area, it is clear that this action has at least a facial element of unique public importance. (This point, not covered by the moving papers, was elicited on oral argument of the motion.) In cases involving professional persons, the EEOC and private litigants have been singularly unsuccessful in establishing employment discrimination because of the admittedly subjective evaluation and personal factors inherent in the selection and promotion of professors, lawyers, etc. This action appears to be one of the rare cases involving a sufficiently large number of professional persons (who are coincidentally both doctors and professors) to allow the effective use of statistical analysis.

There are, we are told, 392 male faculty members and 152 female faculty members. There is an overt gross disparity in the average salaries of the male faculty members compared to the female, but these figures are, of course, meaningless unless comparisons are made on the basis of years of experience and employment, and other relevant factors. (This type of comparative information apparently has not yet been produced.) It is clear that in areas such as this the EEOC's expertise can be of material aid in analyzing evidence. *Marshall v. Electric Hose and Rubber Co.,* 65 F.R.D. 599, 607–08 (D.Del.1974). It has been held in this circuit that:

> District courts should not be niggardly in allowing a government agency to intervene in cases involving a statute it is required to enforce; indeed, a hospitable attitude is appropriate.

*Blowers v. Lawyers Co-operative Publishing Co.,* 527 F.2d 333, 334 (2d Cir. 1975).

■ At the outset, defendants argue that the EEOC should not be allowed to intervene since it has not met the requirements of 42 U.S.C. § 2000e–5(b) concerning investigation and conciliation prior to the institution of litigation. (Defendants read this section in conjunction with sub-section (f)(1) concerning the institution of litigation to make the administrative processes a prerequisite, *citing Equal Employment Opportunity Commission v. Hickey-Mitchell Co.,* 507 F.2d 944 (8th Cir. 1974).) However, a direct reading of the statutory language does not seem to impose these requirements on an effort to intervene in existing litigation. If it did, it is doubtful that the EEOC, in most instances, would be able to make a timely intervention motion.

■ While there has been only limited interpretation of the section, the courts have generally agreed that the legislative history and a reasonable interpretation of Title VII allows intervention, to protect public interests, without those prerequisite proceedings which would justify the initiation of its own action. *Bennett v. McDonald's Systems, Inc., supra; Mills v. Bartenders International Union, Local 41,* 10 E.P.D. § 10524 at 6195 (D.C.Cal.1975). It is true that the EEOC may not use intervention as a means of avoiding these necessary processes if it makes charges more expansive than the existing litigation, but to the extent that the charges are co-extensive

with the claims already asserted in the private action, intervention without investigation or conciliation has been upheld. *Jones v. Holy Cross Hospital, supra.* Indeed, the EEOC, in intervention, can represent a larger class than the original plaintiffs, providing that the claims asserted against the defendant are identical. *Stuart v. Hewlett Packard Co.*, 66 F.R.D. 73 (E.D.Mich.1975).

The need for timely intervention is acute since some courts have held that a failure by the EEOC to intervene will prohibit subsequent government litigation where the private action raised substantially the same issues and sought relief from the same parties. *Compare Equal Employment Opportunity Commission v. Kimberly-Clark Corp.*, 511 F.2d 1352 (6th Cir. 1975) *with Equal Employment Opportunity Commission v. Missouri Pacific Railroad Co.*, 493 F.2d 71 (8th Cir. 1974). *See also Equal Employment Opportunity Commission v. Huttig Sash & Door Co.*, 511 F.2d 453 (5th Cir. 1975). Finally, even if investigation and conciliation were viewed as desirable aims prior to litigation in most cases, in light of the attitude of the defendants in opposing EEOC inquiry into their activities, it simply would not have been practical here.

▌▌▌ The major thrust of the defendants' attack upon EEOC intervention is that it rests solely upon the unproven allegations of the plaintiffs' complaint and litigation file. Defendants ask us to evaluate the merits of the case in what would amount to the type of mini-hearing condemned by the Second Circuit for class actions in *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968). The court is not free to conduct such a preliminary inquiry. While it appears that much of the plaintiffs' case is based upon personal surmise and speculation, only the defendants have

access to the necessary information to make objective evaluations and they have, to date, rigidly opposed disclosing this information. Consequently, it ill behooves them to complain of a lack of a factual basis while so strenuously resisting an exposition of the evidence.*

There is one aspect of the intervention which is troublesome. Both the complaint and the EEOC charges originally related only to a single department and a single department head. The amended complaint, filed June 16, 1976, named several additional department heads as defendants. The files do not reveal the basis for these additional department heads or the basis on which the EEOC followed the plaintiffs' lead in seeking to intervene against all defendants.

Undoubtedly there is a good deal of personal distress in being named a defendant in a suit prosecuted by a major governmental agency. It is not a situation to which a defendant should be lightly subjected. On the other hand, since promotions and salaries appear to be substantially a function of the department heads, they may well be necessary parties to the fashioning of any type of relief, if relief is appropriate. Moreover, if employment discrimination exists at the college, it may not be the result of a university or college policy, but rather that of just certain department heads who, given relative freedom of action, are expressing their own personal biases.

It is, of course, desirable to have the scope of the Commission's complaint parallel the plaintiffs'. Plaintiffs have offered to amend the claim so that it would name only the positions and not the persons occupying them. The defendants oppose such an amendment, and seek to have everyone but the college dismissed as defendants. It would be better if the existing plaintiffs,

---

* The defendants also complain about a committee report, prepared at the college prior to 1972, indicating a basis for believing that women were not theretofore receiving equal employment opportunities. It is true that Title VII did not cover educational institutions until after 1972. However, while the passage of Title VII certainly acted as an impetus for the elimination of such attitudes, it did not, *per se*, end all such discrimination. Evidence of earlier discriminatory practices can be considered, if sufficiently related in time and circumstance, as some proof of the continued existence of discrimination. *United States v. Florida East Coast Ry.*, 7 F.E.P. 540 (M.D.Fla.1974).

and the intervening EEOC, made an evaluation, at the earliest possible moment after completing discovery, to determine whether there is adequate prima facie evidence to continue the actions against individual defendants. Following a reasonable period of discovery, the Court will entertain a motion for summary judgment as to individual defendants, if there has been no evidence of personal involvement in discriminatory acts and the plaintiffs have refused to drop them from the action.

The motion by the EEOC to intervene is, in all other respects, granted. An order to this effect is being filed herewith.

SO ORDERED.