## NATIONAL LABOR RELATIONS BOARD v. TAORMINA et al.
### No. 14362.

United States Court of Appeals
Fifth Circuit.

Sept. 17, 1953.

Ruth V. Reel, Atty., David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, George J. Bott, Gen. Counsel, Elizabeth W. Weston, Atty., N. L. R. B., Washington, D. C., for petitioner.

Scott Toothaker, McAllen, Tex., Ewers, Cox & Toothaker, McAllen, Tex., of counsel, for respondents.

Before HOLMES, BORAH, and RIVES, Circuit Judges.

BORAH, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order of May 29, 1951, requiring respondents, E. A Taormina, A. F. Taormina, Mrs. Madeline M. Taormina, Charles Messina and Frank Culucchia, co-partners, d/b/a Ta-

ormina Company, to bargain with the Citrus, Cannery Workers and Food Processors Union, Local 24473, AFL, and granting other related relief.[1]

The respondents are engaged in the business of processing, canning, selling and distributing vegetables and tomatoes and have their principal office and place of business at Donna, Texas, where they operate a cannery plant approximately nine months a year, from October until July. They admit, and the Board found, that they are engaged in commerce within the meaning of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.

In the year 1949, the Union was engaged in organizing certain migrant workers, predominantly Mexican, who were employed by respondents and other cannery operators in the area in question. On February 21, 1949, the Union filed a petition with the Board seeking a representation hearing and eventual certification as a representative for all of the production and maintenance employees at respondents' Donna plant. This hearing was granted, and on May 13, 1949, the Board entered its decision and direction of election affirming the hearing officer's rulings and directing that an election be conducted to determine whether or not such employees desired to be represented by the Union for purposes of collective bargaining. At the election, held July 22, 1949, the Union obtained a majority of the valid ballots cast and on August 9, 1949, the Board issued its supplemental decision and certification of representatives certifying the Union as the exclusive representative of respondents' employees in an appropriate collective bargaining unit consisting of all production and maintenance employees at the Donna plant.

On December 19, 1949, E. C. DeBaca, general organizer for the American Federation of Labor, wrote to respondents' attorney and representative requesting that negotiations be opened between the Union and the respondents for a contract to cover the employees of the Taormina Canning Company in their appropriate unit, for wages and hours, rate of pay, and other conditions of employment. After some reasonable delay the parties met on February 1, 1950, and between that date and August 23, 1950, a number of bargaining conferences were held which were attended by representatives of the employer and the Union and various other interested parties representing the Federal Mediation and Conciliation Service, the American Federation of Labor, and the Texas Canners' Association.[2] However, the parties were unable to reach an agreement on all major issues and on June 15, 1950, the Union filed a charge with the Board against employer Taormina Company alleging that employer had engaged in and was engaging in unfair labor practices within the meaning of Section 8(a) (1) and (5) of the Act. More specifically the charge alleged that on June 8, 1950, and at all times since certification by the Board, the company by and through its officers and agents refused to bargain collectively with the authorized agents of the Union and that by such acts, and by other acts and conduct, the employer interfered with, restrained and coerced its employees in the exercise of the rights guaranteed in Section 7 of the Act.

On August 23, 1950, and following the filing of the charge against the employer the parties met for the last time and again failed to reach an agreement. Thereafter, on October 26, 1950, the Board issued its complaint alleging that respondents refused and continued to refuse to bargain collectively with the Union as the exclusive representative of all production and maintenance employees, and by such acts respondents engaged in and were thereby engaging in unfair labor practices affecting commerce within the meaning of Section 8(a) (1) and (5) and Section 2(6) and (7) of the Act. By answer filed, respondents admitted

---

1. The Board's decision and order are reported at 94 N.L.R.B. 884.

2. This association is an organization of cannery operators of which respondents are members.

that a majority of their employees designated or selected the Union as their representative for the purposes of collective bargaining; denied the allegations charging unfair labor practices; and alleged that they were without knowledge as to whether or not the Union still represented the majority of such employees for collective bargaining purposes. A hearing was had before a duly designated trial examiner who issued his intermediate report finding that respondents had engaged in the aforementioned unfair labor practices in violation of Section 8(a) (5) of the Act. Further, that respondents by said acts had interfered with, restrained and coerced their employees in the exercise of rights guaranteed by Section 7 in violation of Section 8(a) (1) of the Act. The examiner recommended that they cease and desist therefrom and take certain affirmative action. Upon exceptions duly filed, the Board reviewed the rulings of the trial examiner and finding that no prejudicial error was committed affirmed the rulings and adopted his findings, conclusions, and recommendations.

On the basis of its findings, the Board ordered respondents to cease and desist from refusing to bargain collectively with the Union and from interfering in any other manner with the efforts of the Union to bargain collectively with the respondents on behalf of all production and maintenance employees at their Donna plant. Affirmatively, the order required respondents upon request to bargain collectively with the Union, to embody any understanding reached in a signed agreement, and to post the usual notices. This decision and order was served upon respondents and the Board thereafter brought its petition in this Court praying for a decree enforcing in whole its order and requiring respondents to comply therewith.

The respondents resist enforcement. In their answer they deny that they have engaged in or are engaging in any of the unfair labor practices as charged, that the Board's findings of fact are supported by evidence, and that any showing has been made that enforcement of the Board's order is presently desirable. In the alternative and in the event that this Court finds that the Board's findings of fact are supported by evidence, respondents apply for leave to adduce additional evidence[3] to show that they have complied with the decision and order of the Board in that they have taken the affirmative action required therein and that the Union no longer represented a majority of the Taormina employees. The prayer is that this court set aside in whole the Board's order, or in the alternative that leave be granted to adduce additional evidence which it was impossible to have adduced at the hearing before the Board inasmuch as the events transpired subsequent to the hearing.

The first, and controlling, question is whether the Board's finding that respondents' conduct in its totality showed their bad faith in their bargaining negotia-

---

**3.** The application for leave to adduce additional evidence recites that:

"2. Respondents would show that the hearing before the trial examiner in this proceeding was held on October 24, 1950, October 25, 1950 and October 26, 1950, at Edinburg, Texas, and that following such hearing they met with and bargained with the Union on November 16, 1950, January 10, 1951, January 18, 1951, January 26, 1951, July 21, 1951 and July 24, 1951; and that three of these conferences were held after the date of the Board's decision and order of May 29, 1951.

"Respondents would further show that on July 26, 1951, they received a copy of a letter from the Regional Director of the National Labor Relations Board, which letter was dated July 25, 1951 and addressed to Mr. Alberto Rodriguez, Donna, Texas, advising Mr. Rodriguez that a petition for decertification had been received from him by the Board and was being dismissed. The Board's letter states that 94 employees of respondents' records show that this number constituted about 85% of the employees of the plant at the time it was signed.

"3. Respondents would show that on July 24, 1951 they posted at their place of business the notices furnished to it by the Board, and that on the same date it advised the Regional Director in writing that the notices had been posted."

tions with the Union is supported by substantial evidence. We think the record as a whole supports the finding.

The record shows clearly that from the first bargaining meeting on February 1, 1950, the respondents insisted that the American Federation of Labor be a party to the contract before they would enter into it and they persisted [4] in their position in the face of the AFL refusal to become a party—a matter over which the Union, as a local affiliate, had no control. By reason of their unwarranted conduct, respondents needlessly delayed the consummation of an agreement. Indeed, the joinder of the AFL was one of the major issues remaining unsettled when negotiations were broken off on August 23, 1950. Furthermore, and what is of no less importance, the employer actually sought to impose upon its employees a bargaining representative other than the one elected by them and certified by the Board in defiance of the requirements of the statute that it bargain with the representative that its employees have chosen. Cf. N. L. R. B. v. Harris-Woodson Co., 4 Cir., 179 F.2d 720; Continental Oil Co. v. N. L. R. B., 10 Cir., 113 F.2d 473, 477; Standard Generator Company of Missouri, Inc., 90 N.L.R.B. No. 131.

■ The Union's charge against respondents was filed with the Board on June 15, 1950. Thereafter, respondents repeatedly [5] insisted that the charge be disposed of before negotiations could or would be resumed, contrary to the principle established by the decisions of this and other courts that the filing or pendency of unfair labor practice charges does not relieve an employer of his duty to bargain collectively. N. L. R. B. v. Harris, 5 Cir., 200 F.2d 656, 658; N. L. R. B. v. Jones Furniture Manufacturing Co., 8 Cir., 200 F.2d 774, 775; N. L. R. B. v. H. G. Hill Stores, 5 Cir., 140 F.2d 924, 926; Hartsell Mills Co. v. N. L. R. B., 4 Cir., 111 F.2d 291, 292. As further evidence of bad faith, the record shows that on May 30, 1950, respondents' attorney advised several Union representatives that respondent E. A. Taormina "was going to close the plant down, he won't have a union in there;" that the Union's representatives were "just wasting" their time; that E. A. Taormina had more important business to attend to than to meet with the Union, and that the Union might have to "get a Court order or something like that." It further appears that at a bargaining conference held on June 8, 1950, respondents flatly refused to negotiate further unless and until the Union proved its majority. At this same meeting and with complete inconsistency respondents' attorney advised representative T. F. White of the Federal Mediation and Conciliation Service that respondents had never raised the question as to whether the Union represented a majority of the employees and did not intend to raise it.

■■ We think respondents' sudden demand on June 8th that the Union prove its majority was an afterthought prompted by the suggestion made at the time by T. F. White that if there was any question of representation involved, the Conciliation Service would then have to withdraw and he could not participate in any further negotiations. But be this as it may, the claimed fact that the bargaining agent designated by the Board had lost its majority representation of the employees did not in and of itself terminate the Union's status as bargaining

---

4. Respondent A. F. Taormina testified:
   "Q. On that preamble, it was at all times the position of the company the AFL should be a party to the contract? A. That's right."

5. Respondents' attorney on August 8, 1950, addressed a letter to the Union representative which in pertinent part states:
   "Due to the fact that there is now pending a charge against this Company, charging it with refusing to bargain collectively, we can see no advantage in further negotiations until some formal disposition is made of that charge."

   Thereafter, some time between June 20, 1950, and August 23, 1950, the attorney advised the Union in a telephone conversation that his clients were "pretty burnt up about these charges" and added "If you would withdraw those charges, they are willing to meet with you."

representative. In N. L. R. B. v. Sanson Hosiery Mills, 5 Cir., 195 F.2d 350, this court held that when the Board has duly certified a bargaining representative, such certification must be respected by the employer until set aside by the Board, even though the Union has meanwhile lost its majority support of the employees. When the Board has duly certified a Union, the employer may not thereafter decide for himself that the Union has lost its bargaining status and refuse to deal with it further. See also Franks Bros. Co. v. N. L. R. B., 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020; N. L. R. B. v. Mexia Textile Mills, 339 U.S. 563, 70 S. Ct. 826, 828, 94 L.Ed. 1067. In so refusing we think it plain that respondents were guilty of bad faith. The additional indicia of lack of good faith found by the Board need not, in our opinion, be discussed. Suffice it to say that we are of the fixed opinion that the evidence in this record, considered as a whole, fully supports the Board's finding that respondents refused to bargain in good faith.

 This brings us to the question as to whether respondents' application for leave to adduce additional evidence should be granted. First it is urged that if afforded this opportunity they propose to show compliance with the Board's order—a reason patently lacking in merit as the Supreme Court has held that "the employer's compliance with an order of the Board does not render the cause moot, depriving the Board of its opportunity to secure enforcement from an appropriate court * * *. A Board order imposes a continuing obligation; and the Board is entitled to have the resumption of the unfair practice barred by an enforcement decree." N. L. R. B. v. Mexia Textile Mills, supra. Next it is argued that additional competent evidence "may" be introduced to demonstrate that the Union in fact did not represent a majority of the employees at the time of the alleged refusal to bargain and hence the Board's petition asking that the court issue its enforcement decree compelling collective bargaining by respondents is a request for a vain and idle thing. It is claimed that the evidence would show that a petition for decertification by a "vast majority" of the employees was filed and subsequently dismissed by the Board several days before the rendition of its decision on July 27, 1951. However, this circumstance is without significance here as our decision in N. L. R. B. v. Sanson Hosiery Mills, supra, makes it clear that any controversy arising over the employees' petition for a change in their bargaining representative would be one between the bargaining agent and the employees and is wholly extraneous to the issue here presented, which is whether or not the respondents have unjustifiably refused to recognize and deal with the duly certified representative of the employees. This they have done.

The application for leave to adduce additional evidence is denied; the Board's petition is granted; and its order

Enforced.