UNITED STATES of America, Appellant,

v.

Theron C. LYND, Circuit Clerk and Registrar of Voters of Forrest County, State of Mississippi, Appellees.

No. 19576.

United States Court of Appeals
Fifth Circuit.

April 10, 1962.

Rehearing Denied May 21, 1962.

---

3. See also John Kelley Co. v. Commissioner of Internal Revenue, 326 U.S. 521, 524–526, 66 S.Ct. 299, 90 L.Ed. 278 (1946).

John Doar, Atty., Dept. of Justice, Washington, D. C., for appellant.

Edward L. Cates, Asst. Atty. Gen. of Mississippi, Joe T. Patterson, Atty. Gen. of Mississippi, Dugas Shands, Asst. Atty. Gen. of Mississippi, Peter M. Stockett, Jr., Sp. Asst. Atty. Gen. of Mississippi, Jackson, Miss., M. M. Roberts, Francis T. Zachary, Hattiesburg, Miss., for appellees.

Before TUTTLE, Chief Judge, and HUTCHESON and WISDOM, Circuit Judges.

TUTTLE, Chief Judge.

This is a motion for an injunction pending an appeal which the United States seeks to have this Court issue following a refusal by the District Court for the Southern District of Mississippi to grant a temporary injunction, which the government sought under the provisions of 42 U.S.C.A. § 1971(a) (The Civil Rights Act touching on voting), it being charged in the government's complaint that Negro applicants for registration in Forrest County, Mississippi, were not being treated "without distinction of race [or] color." The government has filed a notice of appeal from the denial of the temporary injunction. Pending the disposition of this appeal on the merits, the government has filed this motion by which this Court is asked to enjoin the alleged violations of the voting rights of the Negro residents of Forrest County in certain particulars as to which the government claims that it offered undisputed proof. Such a motion for an injunction pending an appeal is to be found in the All-Writs Statute, 28 U.S.C.A. § 1651, which provides that:

"The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

Rule 62(g) of the Federal Rules of Civil Procedure, 28 U.S.C.A. also provides that the authority granted to the District Court to grant relief pending an appeal does

"not limit any power of an appellate court or of a judge or justice thereof * * * to suspend, modify, restore, or grant an injunction during the pendency of an appeal or to make any order appropriate to preserve the status quo or the effectiveness of the judgment subsequently to be entered."

The basis of the government's appeal and its subsequent motion for injunction pending appeal is its contention that it has been completely frustrated in an effort to obtain an order of the trial court putting an end to alleged racially discriminatory acts and practices which the government contended in its complaint have deprived Negro citizens of Forrest County of their right to register and to vote without distinction of race or color. The government's efforts to redress the wrongs which it alleges exist in Forrest County commenced on August 11, 1960, ten months prior to the filing of this suit. At that time the United States formally requested that the defendant Lynd, the Registrar of Forrest County, make his registration records available for inspec-

tion and copying under Title III of the Civil Rights Act of 1960, 42 U.S.C.A. § 1974 et seq. These efforts proving fruitless, the government, on January 19, 1961, filed an enforcement proceeding in the District Court to require production of such records. This action also proved fruitless for, although as this Court said in the recent case of Kennedy, Attorney General v. Bruce, 5 Cir., 298 F.2d 860, an order granting the government the right to make such an inspection should have been issued "as a matter of course," the trial court failed for nearly six months to grant such order. Thereupon, on July 6, 1961, this present suit was filed. Thereafter, on February 15, 1962, the court dismissed the enforcement proceeding as "abandoned." This action was taken, so the trial court said, because after the government filed its suit for injunction on July 6, 1961, and moved for discovery of the official registration records of Forrest County under Rule 34 of Federal Rules of Civil Procedure, the trial court considered that this effort, which it also blocked, superseded the enforcement proceeding.

█ In the meantime, the instant litigation was delayed from time to time by dilatory motions, including motions to quash the Rule 34 motion, and including motions to make more definite statement, none of which, of course, should stand in the way of a prompt disposition of a motion for temporary injunction.

Briefly stated, the net effect of the several procedural steps taken by the parties is that the trial court finally set down for hearing the motion for temporary injunction on March 1, 1962, eight months after the suit for injunction was filed, and the posture of the parties was that defendants had objected to, and the trial court had sustained their objections to, giving any access to the records of the Registrar, although at the same time defendants had insisted, and the court had sustained their insistence, on the government's amending its complaint to allege in great detail the name of each applicant who had sought and been de-

nied the right to register, the date of each such application, the name of each Negro who had been refused the right to register, the dates involving any discriminatory mishandling of any Negro registration applications, the names of white people allowed to register who possessed no better qualifications than such Negroes denied the same privilege, and other facts and circumstances showing such discrimination in each of said instances. Moreover, the court had sustained objections by the defendants to the inclusion among the alleged complaining Negro applicants of any who had been denied the right to register or who claimed a discriminatory practice which had occurred prior to February 26, 1959, the beginning of defendant Lynd's term of office. Out of the 63 Negroes whose names the government had supplied by an amendment to the complaint, the trial court required that all but 40 of these be eliminated because the incidents as to which they were identified occurred prior to this date.

The injunction hearing finally came on for trial on March 5th and continued through March 7th. At this time sixteen of the Negroes whose names had been furnished by an amendment to the complaint testified as to experiences with which they were familiar. The government also undertook to prove discriminatory practices by sixteen white witnesses who had been found to be willing to testify in spite of the refusal of the Registrar, with approval of the Court, to make any records of white voters available to the complainant. During the trial it appeared that the defendants actually had in court certain voting records of the Negro witnesses, and the court required that these be turned over to the United States. The court also required that the records touching on the registration experiences of the white witnesses be turned over to the United States, but that they should not be turned over until after the government completed its case in chief. They were actually turned over as to six white witnesses only after the government closed.

Notwithstanding the well-nigh impossible task of showing the true facts, the witnesses produced by the government proved without question that certain serious discriminations had taken place during the term of office of the defendant Lynd. At the conclusion of the presentation by the government of its evidence, the State and the defendant Lynd both reserved the right of cross examination and deferred such cross examination. The defendants then declined to put on any evidence but stated that it would take thirty days to be prepared to file answers to the amended complaint and to prepare for introducing defense witnesses. Thereupon the government moved the Court to issue a temporary injunction. Without doing so, and declining either to grant or refuse a temporary injunction, in terms, the court failed to comply with the motion and granted a recess of thirty days to permit the defendants to file their answer and to prepare for proving their defensive case.

At the time the government made its motion for temporary injunction it is plain that the following facts relevant to the complaint that Negro applicants had been denied equal rights to register and vote in Forrest County had occurred:

(1) No Negro had been registered in Forrest County during defendant Lynd's term of office. There were forty Negroes who were named in the amended complaint who attempted to register during this period; sixteen of them testified that they attempted to register on one or more occasions since February 26, 1959, one of them four times. None was registered.

(2) No Negro was permitted even to apply for registration prior to January 31, 1961. Those who attempted to do so were told by one of the deputies that they had to see Mr. Lynd personally, and if they saw Mr. Lynd they were told by him that he couldn't register them, but he gave no reason and gave no time when he would undertake to do so.

(3) Prior to January 31, 1961, most, if not all, of the white applicants were permitted to register without filling out an application form. It is undisputed that many persons were registered without these formalities.

(4) From January 31, 1961, to the present, obviously qualified Negroes were rejected for registration unless the Registrar has some basis for denying the right to register which has not been communicated to them. Among these are five school teachers in the public schools of Hattiesburg or Forrest County, Mississippi; six of them hold baccalaureate degrees from colleges, and three of them have degrees of Master of Arts.

(5) In spite of the government's contention that no named white person during the defendant's entire tenure in office had been rejected for registration, none of the defendants nor their deputies were able to testify to any individual white person who had been rejected.

(6) From the date when the defendant started to use the application forms for white applicants, the defendant's deputies received applications from white applicants, but refused to receive them from Negro applicants. It was conceded that the Registrar himself was engaged in court as the Circuit Court Clerk two and one-half weeks each month, and was thus frequently unavailable.

(7) The defendant Lynd and his deputies assisted white applicants in filling out their application forms, but refused assistance to Negro applicants. Among the few white registered voters who were found to testify for the government, most of them testified either that they had not been required to fill out forms at all, that they filled them out incorrectly and received aid from the defendant, or were otherwise assisted in completing their registration.

(8) The defendant Lynd refused to give reasons to Negro applicants as to the reason or cause for their rejection, and he required that such applicants wait six months before reapplying for registration, although there is no provision in the statute authorizing such conduct.

(9) All of the sixteen Negro witnesses who testified at the trial were required to write and interpret different provisions of the Mississippi constitution from those provisions of the Mississippi constitution that were submitted to white applicants who testified.[1]

■ We are not now considering the appeal from the refusal of the trial court to grant the temporary injunction on the merits. We are considering only the motion of the government that we grant a temporary injunction pending the hearing of the appeal. We, therefore, do not have for decision the numerous rulings of the trial court, either in relation to the original enforcement suit seeking access to the records or in the present suit for injunction. However, we cannot fail to comment briefly on the course of the litigation because of its direct bearing on the contention of the government that the refusal of the trial court to grant the temporary injunction justifies our granting this relief pending the appeal. We, therefore, point to the fact that this Court has, in the case of Dinkens v. Attorney General of United States, 5 Cir., 285 F.2d 430, and in Kennedy, Attorney General v. Bruce, supra, clearly laid down the rule that the government is entitled to have an order of the trial court authorizing it to inspect the voting records such as are here involved upon the simple assertion by the Attorney General of the United States that there are reasonable grounds for belief that certain voters are being discriminatorily denied their voting rights in a given county. See 42 U.S.C.A. § 1971(c). We have thus held that such allegation need not be enlarged or expanded by supplying detailed information such as was required by the Court in the case on appeal. Likewise, it is clear that there was no justification for the Court's requiring the government to amend its complaint in this civil rights action to allege specific details of voter discrimination as if this were an action for fraud or mistake under Rule 9, Federal Rules of Civil Procedure. These matters are commented on not as a final adjudication of the legal points involved, since they have not been briefed and are not now before us on appeal, but because they are relevant in our considering the need at this time, after nearly nine months following the filing of the suit, to enjoin such discriminatory practices as now appear to be fully proved.

■■ The first objection of the defendants to our granting this relief is that the trial judge did not enter a formal order "refusing" a temporary injunction. He simply failed to do so, although the government made a formal motion during and at the end of its presentation of evidence for the issuance of such an injunction. The movant, under such circumstances, was clearly entitled to have a ruling from the trial judge, and since he did not grant the order his action in declining to do so was in all respects a "refusal," so as to satisfy the requirements of Section 1292, 28 U.S.C.A. We hold, therefore, that the failure of the trial judge to grant the temporary injunction constituted an "interlocutory order of the district court * * * refusing * * * an injunction." Such order is appealable.

1. Three of the Negro witnesses testified that they were required to interpret Section 178, the last sentence of which is:

"In assessing for taxation the property and franchises of corporations having charters for a longer period than ninety-nine years, the increased value of such property and franchises arising from such longer duration of their charters shall be considered and assessed; but any such corporation shall have the right to surrender the excess over ninety-nine years of its charter."

Although we do not here repeat the text of the several sections given to the Negro witnesses and those given to the white witnesses, a reading of them demonstrates beyond any question that by any objective standard those supplied to the Negro applicants were longer, more complicated, and more difficult. Ten white witnesses testified that they were not required to write or interpret any provision of the Mississippi constitution.

The defendants' next contention is that it would be entirely inappropriate for the court at this time, as they claim it would have been for the trial court at the end of plaintiff's testimony, to grant a temporary injunction, because the State has not filed its answer and has not put on its proof. This contention entirely overlooks the nature of a temporary injunction, which is a writ of the trial court, or, in this instance, of an appellate court, issued to protect the rights of any person moving for it upon his making a showing that he is entitled to it. The grant of a temporary injunction need not await any procedural steps perfecting the pleadings or any other formality attendant upon a full-blown trial of this case. The defendant may, of course, make such counter showing as it deems wise or necessary to meet such proof as is produced by the moving party. Where, however, as is here the case, the plaintiff made a clear showing that rights which it sought to vindicate were being violated, and that no response or counter-proof would be available for some considerable period after these rights should have been, but had not been, taken under consideration by the trial court, the plaintiff has satisfied every requirement for the granting of temporary relief pending a final adjudication of the appeal.

We conclude that the likelihood that the court's refusal to grant the temporary injunction will be reversed as an abuse of discretion is sufficiently great that we are warranted in protecting the rights of the Negro registrants pending a decision on this issue by this Court.

Therefore, pending a final determination of the appeal now pending in this Court, the defendants, their agents, employees, successors, and all persons in concert with them are hereby enjoined from engaging in discriminatory acts and practices based on race in the registration for voting in Forrest County, Mississippi, and they are expressly enjoined from:

(1) Denying Negro applicants the right to make application for registration on the same basis as white applicants;

(2) Failing to process applications for registrations submitted by Negro applicants on the same basis as applications submitted by white applicants;

(3) Failing to register and to issue registration cards to Negro applicants on the same basis as white applicants;

(4) Denying Negro applicants the right to be registered by the same office personnel and with the same expedition and convenience as are being permitted to white applicants, and from failing or refusing to give to Negro applicants the same privileges as to reviewing their application forms at the time they are filled out and advising Negro applicants of such omissions as appear on their forms as they are now or heretofore have given to white applicants under similar circumstances;

(5) From administering the constitutional interpretation test to Negro applicants by including as sections to be read and interpreted any sections other than those which at the time of the trial had been used for submission to white applicants;

(6) From requiring rejected Negro applicants to wait any different period before reapplying for registration than may be authorized under the laws of Mississippi and other than is required of white applicants.

In view of the immediate pendency of termination of registration proceedings prior to an early election, it is ordered that this injunction shall be effective immediately, and that the judgment and order of this Court be transmitted forthwith to the Clerk of the District Court for the Southern District of Mississippi, and that the Clerk of this Court send a certified copy hereof to each party defendant, said service to be made upon counsel of record.