519 F.2d 1147
 13 Fair Empl.Prac.Cas. 1137,
10 Empl. Prac. Dec. P 10,405
 UNITED STATES of America, Plaintiff-Appellee,
v.
The CITY OF JACKSON, MISSISSIPPI, et al., etc., Defendants-Appellees,
Lushes Walker and Local Union 1888, etc., Movants-Appellants.
LOCAL UNION 1888 OF the AMERICAN FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES, AFL-CIO, et al.,
Plaintiffs-Appellants,
v.
The CITY OF JACKSON, MISSISSIPPI, et al., Defendants-Appellees.
 
 Nos. 74-2660, 74-2867.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 25, 1975.
 Danny E. Cupit, Dixon L. Pyles, Jackson, Miss., for Lucas Walker and Local Union 1888.
 Robert E. Hauberg, U. S. Atty., L. A. Smith, III, Asst. U. S. Atty., Jackson, Miss., David L. Rose, Michael A. Middleton, Attys., U. S. Dept. of Justice, Washington, D. C., for the U. S.
 John E. Stone, City Atty., City of Jackson, Thomas H. Watkins, Lawrence J. Franck, Rhesa H. Barksdale, Jackson, Miss., for City of Jackson.
 Appeals from the United States District Court for the Southern District of Mississippi.
 Before GIBSON,* THORNBERRY and AINSWORTH, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 In these consolidated appeals, a union local whose members are black employees of the City of Jackson, Mississippi, and several of the union's individual members raise procedural questions arising out of actions by them and by the United States to remedy alleged racial discrimination in employment by the city. Although the appellants and the government have shared this general aim, their efforts have been neither closely coordinated nor aimed at identical remedial objectives and, in No. 74-2660, appellants claim that the government's settlement of its suit with the city will so impair their efforts to obtain the relief due their class that they should be allowed to intervene in the suit. In No. 74-2867, appellants seek in another action against the city to imply from the trial court's failure to rule on their motion for a preliminary injunction a denial of the motion, and ask that we reverse the denial. We dismiss both appeals.
 
 Factual Background
 
 2
 In 1971, appellants filed a class action against the City of Jackson attacking its employment practices under 42 U.S.C. § 1983 (1970). By the summer of 1973, Jackson found its policies under fire not only in this action, but in an additional action by appellants under Title VII of the 1964 Civil Rights Act[1] and in two other private actions[2] as well. During the summer, the Justice Department also entered the picture by initiating an investigation into Jackson's employment practices to determine whether a "pattern or practice"[3] of discrimination existed.
 
 
 3
 By December, the Justice Department had satisfied itself that the city had engaged in illegal practices and invited both the private plaintiffs and the city to enter settlement discussions. Several months of negotiations bore fruit; on Friday, March 21, 1974, the United States filed suit against the City of Jackson and on the following Monday a consent decree was approved by the court. The decree provided for wide-ranging injunctive relief[4] and for back pay to incumbent and former black employees in the amount of $50 per person per year of seniority up to a maximum of $1,000 per person.
 
 
 4
 Had all parties been fully satisfied by the decree,[5] these appeals would not be before us. But although generally content with the injunctive relief, appellants deemed the back pay provision seriously inadequate and sought to intervene in the government action in order to block the decree on the day of its approval. The trial court's denial of that motion is appealed in No. 74-2660.
 
 
 5
 Neither did the course of its original class action please appellants. After extensive discovery, they moved for partial summary judgment or, in the alternative, a preliminary injunction against the city. Because the court deemed in camera inspection[6] of civil service tests necessary for determination of the issue, it reserved ruling on the motion until it could rule on the tests' validity. Although the tests were submitted to the court on July 9, 1973, no ruling had been made by June 25, 1974, the date the appeal in No. 74-2867 was initiated.
 
 No. 74-2660
 
 6
 Although the trial court in the government action denied both intervention as of right and permissive intervention, appellants assert only the former ruling as error on appeal. The text, then, is Rule 24(a)(2)[7] of the Federal Rules of Civil Procedure, which allows intervention of right
 
 
 7
 when the applicant claims an interest relating to the property or transaction which is the subject matter of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 8
 Since all parties agree that appellants have the requisite interest for intervention and because the question of adequacy of representation requires an answer only if we find that denial of intervention "may as a practical matter impair or impede" plaintiffs in protecting their interests, the inquiry quickly focuses on that requirement.
 
 
 9
 The present language of Rule 24, a product of the 1966 Amendments to the Federal Rules, was intended to overcome what was felt to be an overly restrictive attitude toward intervention on the part of the courts. In place of the judicially developed requirement that there be a potential res judicata or collateral estoppel effect on the movant, the amendments sought to substitute a more flexible, non-technical standard of "practical impairment" and to synchronize Rule 24 with the standards for joinder in Rule 19 and the class action provisions of Rule 23. See generally Advisory Committee Note to Rule 24, 39 F.R.D. 69, 109-11 (1966); Atlantis Development Corp. v. United States, 379 F.2d 818 (5 Cir. 1967).
 
 
 10
 As is often the case, gains in flexibility as a result of the new Rule have been offset to some extent by judicial uncertainity and inconsistency; the issue of "practical impairment" is necessarily one of degree and cannot be solved by reference to Rules 19 or 23. It requires instead a consideration of the competing interests of the plaintiff and defendant in conducting and concluding their lawsuit without undue complication and of the public in the speedy and economical resolution of legal controversies. Nevertheless, the courts have generally responded as the Advisory Committee hoped, allowing intervention in some cases because of the potential effects of stare decisis, e. g., Atlantis Development Corp. v. United States, supra ; Nuesse v. Camp, 128 U.S.App.D.C. 172, 385 F.2d 694 (1967), of prospective inability to obtain in personam jurisdiction over a party to the action in which intervention is sought, Diaz v. Southern Drilling Corp., 427 F.2d 1118 (5 Cir.), cert. denied sub nom. Trefina, A. G. v. United States, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970), or of the absence of an alternative forum, United States v. Reserve Mining Co., 56 F.R.D. 408 (D.Minn.1972). But unless the present Rule 24 is to fall prey to the rigidity which resulted in the amendment of its pre-1966 counterpart, we cannot regard any of these circumstances as an automatic occasion for intervention. Our decision can only be made with reference to the facts and procedural posture of this case. See United States v. Allegheny-Ludlum Industries, Inc., 517 F.2d 826, at 841 (5 Cir. 1975).
 
 
 11
 The consent decree approved by the court in this action provides comprehensive injunctive relief, with which appellants have no major objections, and back pay according to a formula based on seniority. By its terms, no present or former city employee is required to accept the proffered back pay; if he deems the award insufficient, he remains free to refuse it and bring suit to establish his entitlement to a greater amount. Only if the employee signs a rather extensive and specific waiver and accepts back pay under the consent decree is he barred from further litigation of its adequacy.
 
 
 12
 The argument chiefly relied on by appellants is that the consent decree's back pay provisions will be given stare decisis effect by courts adjudicating later claims of employees who do not accept back pay under the decree. Thus, even though non-waiving employees will remain free to pursue their individual claims, Rodriguez v. East Texas Motor Freight, 505 F.2d 40, 65 (5 Cir. 1974); Williamson v. Bethlehem Steel Corp., 468 F.2d 1201 (2 Cir. 1972), cert. denied, 411 U.S. 931, 93 S.Ct. 1893, 36 L.Ed.2d 390 (1973), it is contended that the provisions of the consent decree will be given such judicial deference as to practically impair the vindication of those claims. This argument gives insufficient consideration, we believe, both to the significant differences between a consent decree and a litigated judgment on the merits and to the good sense of the federal trial bench.
 
 
 13
 A consent decree is in many respects a contract between the parties thereto. See United States v. ITT Continental Baking Co., 420 U.S. 223, 236-37, 95 S.Ct. 926, 934-35 & n. 10, 43 L.Ed.2d 148 (1975); Craft v. Burrow, 228 Miss. 664, 89 So.2d 722 (Miss.1956). Although the court must approve a consent decree, in so doing it does not inquire into the precise legal rights of the respective parties, Florida Trailer & Equipment Co. v. Deal, 284 F.2d 567, 571 (5 Cir. 1960), but only assures itself that there has been valid consent by the concerned parties and that the terms of the decree are not unlawful, unreasonable, or inequitable. United States v. Allegheny-Ludlum Industries, Inc., supra at 849; Young v. Katz, 447 F.2d 431 (5 Cir. 1971); 30A C.J.S. § 678 Equity. This is not, of course, to imply that the consent decree is a legal entity of somehow lower stature. It is a highly useful tool for government agencies, since it maximizes the effectiveness of limited law enforcement resources;[8] by reaching agreement with private parties as to the specifics of substantial compliance, the government may avoid the risks as well as costs of full scale litigation of each point.[9] But as beneficial as the process may be, it is above all a process of compromise in which, "in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation," United States v. Armour & Co., 402 U.S. 673, 682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971), rather than an attempt to precisely delineate legal rights.
 
 
 14
 We cannot assume that courts will not recognize the special characteristics and purposes of consent decrees. To the contrary, we believe that courts fully understand that such decrees do not purport to be definitive statements of the parties' legal rights and will accord them little or no weight in the determination of the rights of persons not party to them.[10] See Rodriguez v. East Texas Motor Freight, supra at 65-66; Air Lines Stewards, Local 550 v. American Airlines, Inc., 455 F.2d 101 (7 Cir. 1972). Thus any impediment to appellants as a result of stare decisis should be minor, particularly in comparison to the countervailing interests of the city in concluding this phase of the litigation and, more importantly, the interests of the public and of affected employees and future job applicants in prompt implementation of the relief provided for in the decree.[11]
 
 
 15
 A second way in which appellants might be deemed "impaired or impeded" by the consent decree is by the res judicata foreclosure of further[12] claims of individual class members which will result from their signing a waiver in conjunction with accepting back pay. Of course, those members who sign a valid waiver will have no complaint, but non-signing class members may argue that, to the extent that fellow employees opt for an immediate payoff, the practical likelihood that the claims of remaining class members will be vindicated by class action is reduced. This may be true either because class representatives will lack incentive to pursue the action further or because the diminished class may no longer meet the requirements of Rule 23.[13]
 
 
 16
 In either case, we feel that the requirements of Rule 24 are not met. The interest that must be impaired or impeded under the Rule is the substantive one created by Title VII of the 1964 Civil Rights Act. A procedural interest, either in maintaining the action on behalf of a class as class representative, or in having one's rights vindicated as a member of a class in a class action rather than through an individual lawsuit, is not within the Rule's contemplation. To allow intervention as of right in such instances would, in light of the inevitable procedural complexity of many class actions, result in delays in the resolution of legal controversies which would far outweigh any benefits to be gained by resolving all facets of the controversy at a single time.
 
 
 17
 Because the motion to intervene was properly denied by the lower court, this court lacks jurisdiction of this appeal and it is dismissed for that reason. See United States v. Allegheny-Ludlum Steel Industries, Inc., supra at 841; Weiser v. White, 505 F.2d 912 (5 Cir.), cert. denied, --- U.S. ---, 95 S.Ct. 1998, 44 L.Ed.2d 482 (1975).
 
 No. 74-2660
 
 18
 In this appeal we deal with one of appellants' other actions against the City of Jackson and the trial judge's failure to rule promptly on appellants' motions for a preliminary injunction or partial summary judgment. Invoking our decision in United States v. Lynd, 301 F.2d 818 (5 Cir.), cert. denied, 371 U.S. 893, 83 S.Ct. 187, 9 L.Ed.2d 125 (1962), appellants seek to treat the judge's inaction as a denial of their motion and to have us reverse the denial and grant them preliminary relief.
 
 
 19
 Lynd involved an effort on the part of the United States to secure voting rights for blacks in Mississippi in the early 1960's. The government first sought to inspect and copy certain voter registration records but was refused by the local registrar. After an enforcement proceeding was filed in district court, the trial judge failed to act for nearly six months despite a then-recent Fifth Circuit decision which clearly established the government's right to relief. The United States persevered, however, and filed an action seeking, inter alia, a temporary injunction of discriminatory voter registration practices. An injunction hearing finally began ten months later, after various dilatory actions by the defendant in which the trial court acquiesced. After the government had presented evidence establishing what this court deemed a convincing case, the trial judge granted the defendant's motion for a thirty day recess to allow further preparation of defendant's case and took no action on the motion for a temporary injunction.
 
 
 20
 Thus, in Lynd there was a convincing showing, by evidence at a hearing on the merits, of the movant's right to relief. Moreover, there were indications of partiality on the part of the trial court and a paucity of plausible excuses for the delay. Finally, there was a particular need for immediate relief due to an impending election. In light of these circumstances, the court was able to satisfy itself that a failure on the part of the trial court to grant the relief requested would have amounted to an abuse of discretion and that the delay occasioned by the trial court's refusal to act was unjustifiable.
 
 
 21
 Although we recognize this court's power to grant the requested relief in the unusual case where a failure to do so would amount to an abuse of discretion, NAACP v. Thompson, 321 F.2d 199 (5 Cir. 1963), and there is unjustified delay, we do not find this to be such an instance. There is no doubt that, as the city suggests, some of the delay in ruling on appellants' motion is properly attributable to the necessity of examining and analyzing the employment tests submitted to the court in July, 1973. Perhaps more important is the fact that settlement negotiations involving appellants and appellees, as well as other private parties and the United States, were underway during much of the period in question. We cannot say that during this period of good faith negotiation it was improper for the trial court to refrain from ruling on appellants' motion. Had there been a settlement which satisfied all parties, such restraint would have both resulted in economies of judicial resources and avoided the possibility of inconsistency between the commands of the requested injunction and the negotiated settlement.
 
 
 22
 Moreover, it appears to us that the record in this case is not yet sufficiently developed to show appellants' entitlement to the relief they seek. Although the showing of racial disparity in employment made by appellants at the December 5, 1972, hearing was substantial, we believe that, without examination of the City's employment tests, it cannot be said that appellants have shown the "great likelihood, approaching near certainty," of success which is necessary for this court to issue an original injunction.[14] Greene v. Fair, 314 F.2d 200, 202 (5 Cir. 1963). See also Acree v. County Bd. of Educ. of Richmond County, 399 F.2d 151 (5 Cir. 1968).
 
 
 23
 It would seem particularly inappropriate for us to issue the injunction requested in light of the present operation of the consent decree in United States v. City of Jackson. Much of the relief requested here has been provided by that decree and such an injunction would result in overlapping and perhaps inconsistent commands to the city. We instead dismiss this appeal, confident that those matters which truly remain at issue will be expeditiously resolved by the trial court. If such action is not forthcoming within a reasonable time, appellants may of course seek mandamus or renew the arguments made in this cause.
 
 
 24
 Accordingly, the consolidated appeals are dismissed.
 
 
 
 *
 Of the Eighth Circuit, sitting by designation
 
 
 [1]
 § 706 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 (1970)
 
 
 [2]
 Bell v. City of Jackson, Civ. Action No. 72J-153C (S.D.Miss.1972); Corley v. Jackson Police Dept., Civ. Action No. 73J-4(C) (S.D.Miss.1973)
 
 
 [3]
 See § 707 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-6 (1970). Although the same substantive law applies in actions by aggrieved individuals under § 706 and "pattern or practice" actions under § 707, their purposes and procedural prerequisites differ significantly. See United States v. Allegheny-Ludlum Industries, Inc., 517 F.2d 826, 843 (5 Cir. 1975)
 
 
 [4]
 The decree, inter alia, enjoins employment discrimination on the part of the city, requires an affirmative recruitment program to meet hiring goals (generally set at 50% black and 331/3% female), prohibits use of unvalidated employment tests, and provides for accelerated promotions to incumbent blacks who have been limited to low opportunity jobs
 
 
 [5]
 In Bell and Corley, the other private actions against the city, more limited consent decrees were entered. These decrees were, however, incorporated by reference in the decree entered in the government action
 
 
 [6]
 The city alleged that the tests were confidential and that disclosure of them would both destroy their usefulness and breach a contract with the maker of the tests
 
 
 [7]
 The applicability of Rule 24(a)(1) is foreclosed by our recent decision in United States v. Allegheny-Ludlum Industries, Inc., supra at 842
 
 
 [8]
 See also SEC v. Everest Mgmt. Corp., 475 F.2d 1236, 1240 (2 Cir. 1972). The EEOC, which since March, 1974, has had the § 707 powers exercised by the Justice Department in this case, see 42 U.S.C. § 2000e-6(c) (1970), suffers from severe work backlogs. See United States v. Allegheny-Ludlum Industries, Inc., supra at 848 n. 25
 
 
 [9]
 Because of the consensual nature of the decree, voluntary compliance is rendered more likely, and the government may have expeditious access to the court for appropriate sanctions if compliance is not forthcoming. At the same time, the private parties involved also minimize costly litigation and adverse publicity and avoid the collateral effects of adjudicated guilt
 
 
 [10]
 This is particularly appropriate in the circumstances of this case, since the determination of back pay awards, as a matter of legal right rather than agreement, is usually and preferably an individualized process. E. g., Pettway v. American Cast Iron Pipe Co., 494 F.2d 211, 259, 262-63 (5 Cir. 1974); Johnson v. Goodyear Tire & Rubber Co., 491 F.2d 1364 (5 Cir. 1974); United States v. Georgia Power Co., 474 F.2d 906, 921-22 (5 Cir. 1973). In fashioning injunctive relief, of course, courts should and do take care to avoid overlapping or conflicting injunctive commands
 
 
 [11]
 It seems to us possible that, in its discretion under Rule 24(b), the trial court might have permitted intervention for the limited purpose of allowing appellants an opportunity to show entitlement of the employees to a larger back pay award. See Shapiro, Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators, 81 Harv.L.Rev. 721, 752-56 (1968). Such limited intervention need not have postponed approval of the injunctive or back pay provisions of the decree; the court might have required only that information as to the pendency of the intervenors' claims be included in the waiver to be presented to employees. In this way, the intervenors' contentions might have been heard and tested without the delay which this appeal has entailed and without significant impediment to the implementation of the decree
 This is mentioned only to suggest that in some cases there may be middle ground upon which the competing interests at stake here may be accommodated. It is not meant to imply either that the precise action described would be permissible under Rule 24(b) or that the denial of permissive intervention in this case amounted to an abuse of discretion. Appellants make no such contention.
 
 
 [12]
 "Further" in this context is meant only to refer to claims made later in time concerning violations prior to the signing of the decree. Any claims for acts or practices of discrimination taking place after this date are, of course, not foreclosed by the waiver. See United States v. Allegheny-Ludlum Industries, Inc., supra at 854
 
 
 [13]
 Rule 23(a) requires, inter alia, that the class must be "so numerous that joinder of all members is impracticable."
 
 
 [14]
 We also believe that appellants have not made such a showing in connection with their claim that the city is obligated to check off dues of members of Local 1888